UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

LORENZO ANTHONY,

        Plaintiff,                      Case No. 2:05-cv-64
                                                HON. RICHARD ALAN ENSLEN
v.

CATHERINE BAUMAN, et al.,

        Defendants.
_____/

## REPORT AND RECOMMENDATION

        This is a civil rights action brought by a state prisoner pursuant to 42 U.S.C. § 1983. Defendants have filed a motion for summary judgment pursuant to Fed. R. Civ. P. 56(b). For the reasons outlined below, I recommend that the court grant Defendants' motion for summary judgment.

        Plaintiff Lorenzo Anthony, during the events in question, was incarcerated at the Alger Maximum Correctional Facility (LMF), located in Munising, Michigan. Plaintiff claims that from August 24, 2004, to February 3, 2005, he was placed in a "No Out-of-Cell Movement" cell (or NOCM cell), where he was deprived of access to the segregation yard, typewriter use, haircuts, nail clippers, shaving razors, and cleaning supplies such as a broom, mop, dustpan, toilet brush, and toilet cleanser. Plaintiff claims that his Eighth Amendment rights were violated and that his placement in an NOCM cell was cruel and unusual punishment. Plaintiff also claims that his placement in an NOCM cell violated his right to due process. Plaintiff asserts a First Amendment claim, arguing that

deprivation of typewriter use limits his access to the courts. Finally, Plaintiff has filed a state law claim for intentional infliction of emotional distress.

An NOCM cell is a penological restriction placed on a prisoner that limits his access to various privileges at LMF. While in an NOCM cell, prisoners are to be deprived of a shaving razor, haircuts, nail clippers, yard access, and access to the prisoner typing room (Plaintiff's Exhibit B, Memorandum dated December 7, 2004, Docket #1) .

Plaintiff has a history of disciplinary problems. He has received 471 misconduct tickets since he was incarcerated in 1995. These misconducts include many types of destructive and assaultive behavior. Specifically, Plaintiff has scratched his door window, melted his cell light, destroyed his mattress, broken sprinkler heads, lit a mat on fire, ripped a sink from the wall, made holes in his cell wall, broken cell windows, and destroyed cable and electrical boxes. Plaintiff has committed numerous assaults, including many sexual offenses. Plaintiff would also make specific threats of violence and sexual assault towards female officers, including threats of genital mutilation and decapitation. Plaintiff has, on more than one occasion, attempted to grope female officers. On one occasion, he grabbed a female guard's wrist and pulled her arm through the slot in his door. Another time, he grabbed a guard's breast, twisted her arm, and proceeded to urinate on her. Plaintiff has also committed other assaults by throwing feces or other bodily fluids onto both guards and prisoners. During his transfer to LMF from the Ionia Correctional Facility on June 17, 2004, Plaintiff broke free of his restraints and attempted to escape. Since his arrival at LMF, Plaintiff has received 86 major misconduct tickets. From August 23, 2004, to June of 2005, Plaintiff was placed on NOCM status and became subject to the restrictions mentioned above.

Plaintiff's NOCM cell measures approximately 12 feet by 12 feet and contains a toilet, a sink, a food slot, windows on the door and to the outside, a desk and a sleeping area.

Plaintiff was allowed to leave his cell for the following reasons: medical/dental visits, major misconduct hearings, and shakedowns. Plaintiff also claims that he was deprived of showers for an extended time, and did not have access to the segregation yard, even after a period of 30 days in his cell. There is no official procedure that identifies NOCM policy (Exhibit C, "Defendant's responses to plaintiff's second requests for admission," Docket #95, p.3). However, internal prison memorandums prescribe prisoners a five day exercise break for every 30 days spent in an NOCM cell (Exhibit A, "Memorandum," July 6, 2005, Docket #95).

A summary judgment motion is to be granted if there is no genuine factual dispute, and a judgment can be issued as a matter of law. If the record as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial. In considering a motion for summary judgment, the evidence must be viewed in a light most favorable to the non-moving party, and the credibility of evidence or testimony is not to be evaluated.

Defendants claim that Plaintiff has failed to exhaust his administrative remedies and, as such, summary judgment should be granted with respect to all of the defendants. Defendants note that Plaintiff has failed to fully exhaust his claims against Defendant Bobo, and applying the Sixth Circuit's total exhaustion rule, all claims against all defendants should be dismissed without prejudice. *Jones-Bey v. Johnson*, 407 F.3d 801 (6th Cir. 2005). However, the Sixth Circuit no longer follows the total exhaustion rule. Another panel of the Sixth Circuit has recently held that *Jones-Bey* was improperly decided. In *Spencer v. Bouchard*, ___ F.3d ___, 2006 WL 1528876 (6th Cir., June 6, 2006), the court held that the "partial exhaustion rule" is the law of this circuit requiring the dismissal of only those claims that are unexhausted and allowing the case to proceed on the exhausted claims. Since the Sixth Circuit is unable to affirmatively decide this issue, the safest course is to follow the "partial exhaustion rule," until the Supreme Court resolves this issue in

*Williams v. Overton*, 126 S.Ct. 1463 (2006); *Jones v. Bock*, 125 S.Ct. 1462 (2006). As such, the claim against Defendant Bobo can be dismissed for lack of exhaustion. However, in the opinion of the undersigned, the Court should consider the rest of Plaintiff's claims against the remaining Defendants.

The first claim Plaintiff raises is that he was deprived of exercise privileges and, thus, his Eighth Amendment rights were violated. The Eighth Amendment prohibits cruel and unusual punishment. Traditionally, the cruel and unusual punishment clause was interpreted to prohibit barbarous or shocking forms of punishment. Over the years, the concept of cruel and unusual punishment has been expanded to encompass punishments which are unconscionably excessive in relation to the offense committed. *See Gregg v. Georgia*, 428 U.S. 153, 173 (1976). Furthermore, punishment which is without penological justification or involves the unnecessary and wanton infliction of pain also violates the Eighth Amendment's proscriptions. *See Rhodes v. Chapman*, 452 U.S. 337 (1981); *see also Gregg*, 428 U.S. at 173.

The Eighth Amendment's proscription against cruel and unusual punishment has also been extended to require certain minimal living conditions within the prison environment. Under the "deliberate indifference" standard applicable to such claims, plaintiff must establish both that he is being denied "the minimal civilized measure of life's necessities" and that the defendants have been deliberately indifferent to plaintiff's needs. *Wilson v. Seiter*, 501 U.S. 294 (1991).

This is a two-part test involving both an objective and a subjective element. First, plaintiff must establish that he is being denied a single, identifiable necessity of civilized human existence. *Wilson*, 501 U.S. at 298. In *Rhodes*, the Supreme Court explained:

> In *Estelle v. Gamble*, *supra*, we held that the denial of medical care is cruel and unusual because, in the worst case, it can result in physical torture, and even in less serious cases, it can result in pain

- 4 -

> without any penological purpose. In *Hutto v. Finney*, 437 U.S. 678 (1978)], the conditions of confinement in two Arkansas prisons constituted cruel and unusual punishment because they resulted in unquestioned and serious deprivations of basic human needs. Conditions other than those in *Gamble* and *Hutto*, alone or in combination, may deprive inmates of the minimal civilized measure of life's necessities. Such conditions could be cruel and unusual under the contemporary standard of decency that we recognized in *Gamble*. But conditions that cannot be said to be cruel and unusual under contemporary standards are not unconstitutional. To the extent that such conditions are restrictive and even harsh, they are part of the penalty that criminal offenders pay for their offenses against society.

*Rhodes*, 452 U.S. at 347.

The "core" requirements of the Eighth Amendment are "minimally adequate" necessities of civilized life, including reasonably adequate food, clothing, shelter, sanitation, medical care, and personal safety. *Grubbs v. Bradley*, 552 F. Supp. 1052, 1222 (M.D. Tenn. 1982).

The subjective component of the deliberate indifference standard "mandate[s] inquiry into a prison official's state of mind." *Wilson*, 501 U.S. at 298-299.

> Not every governmental action affecting the interests or well-being of a prisoner is subject to Eighth Amendment scrutiny, however. . . . [C]onduct that does not purport to be punishment at all must involve more than ordinary lack of due care for the prisoner's interests or safety. This reading of the Clause underlies our decision in *Estelle v. Gamble, supra*, at 105-106, which held that a prison physician's "negligen[ce] in diagnosing or treating a medical condition" did not suffice to make out a claim of cruel and unusual punishment. It is obduracy and wantonness, not inadvertence or error in good faith, that characterize the conduct prohibited by the Cruel and Unusual Punishment Clause, whether that conduct occurs in connection with establishing conditions of confinement, supplying medical needs, or restoring official control over a tumultuous cellblock.

*Whitley v. Albers*, 475 U.S. 312, 319 (1986).

Turning first to the objective component of the *Wilson* test, severe restriction on exercise may implicate the Eighth Amendment. In *Patterson v. Mintzes*, 717 F.2d 284 (6th Cir.

- 5 -

1983), the inmate claimed that he was denied out-of-cell exercise during a 46-day period, without penological justification. The Sixth Circuit responded as follows:

> It is generally recognized that a total or near-total deprivation of exercise or recreational opportunity, without penological justification, violates Eighth Amendment guarantees. Inmates require regular exercise to maintain reasonably good physical and psychological health. *Ruiz v. Estelle*, 679 F.2d 1115, 1152 (5th Cir. 1982), *citing Campbell v. Cauthron*, 623 F.2d 503, 506-507 (8th Cir. 1980); *Spain v. Procunier*, 600 F.2d 189, 199 (9th Cir. 1979). *See also Montana v. Commissioners Court*, 659 F.2d 19, 22 (5th Cir. 1981), *cert. denied*, 455 U.S. 1026, 102 S. Ct. 1730, 72 L.Ed.2d 147 (1982); *Franklin v. State of Oregon, State Welfare Division*, 662 F.2d 1337, 1346 (9th Cir. 1981); *Kirby v. Blackledge,* 530 F.2d 583, 587 (4th Cir. 1976).

*Id.* at 289.

In this pre-*Wilson* case, the Sixth Circuit refused to render a *per se* requirement concerning prisoner exercise and recreation. Rather, the Sixth Circuit mandated that resolution of the issue requires case-by-case analysis. Factors such as the size of the cell, opportunity for contact with other inmates, time per day expended outside the cell, other opportunities for recreation, justifications for denial of the right to exercise, physical or psychological injuries resulting from a lack of exercise, an inmate's particularized need for exercise, and the length of the restriction are to be considered. *See Patterson*, 717 F.2d at 289.

In *Walker v. Mintzes*, 771 F.2d 920 (6th Cir. 1985), the issue of out-of-cell exercise was presented again. There, the Sixth Circuit "invited" the district court to consider on remand whether outdoor exercise was constitutionally necessary at all. *Id.* at 927. The court suggested that a particular type of recreation might not be required depending upon "the other types of restrictions placed on the inmates." *Id.* The court went on to state:

> In *Hoptowit,* 682 F.2d at 1247, the court noted that there might be an eighth amendment violation in a case where an inmate is isolated and is deprived of "nearly all fresh air and light." In *Spain v. Procunier*,

> 600 F.2d at 199, the court refused to adopt a *per se* rule that "deprivation of outdoor exercise is a . . . violation of the eighth amendment." Instead, the court recognized only that "some form of regular outdoor exercise is extremely important to the psychological and physical well being of the inmates," *id.,* and held that where certain inmates were permanently confined virtually the entire day in one cell, received "meager" outside movement, and engaged in minimal prisoner contact, those inmates must receive one hour of outdoor exercise per day, five times a week. *See also Toussaint v. Yockey*, 722 F.2d 1490 (9th Cir. 1984).

*Id.* at 927-928.

In an unpublished decision, the Sixth Circuit reversed the lower court's dismissal of a prisoner's claim that his Eighth Amendment rights were violated when his exercise was limited to 30 minutes per day indoors in full restraints:

> Courts have stated that some form of regular outdoor exercise is important to the psychological and physical well-being of inmates and its lack may state a cause of action under the eighth amendment. *Walker v. Mintzes,* 771 F.2d at 927-28; *Ruiz v. Estelle,* 679 F.2d 1115, 1152 (5th Cir. 1982); *Spain v. Procunier* 600 F.2d 189, 199 (9th Cir. 1979). The determination of when restricted exercise rises to a level of constitutional magnitude depends upon the facts of each case, including the reasons and the length of time the restrictions are imposed. *See, e.g., Martin v. Tyson*, 845 F.2d 1451, 1456 (7th Cir.) (per curiam), *cert. denied*, 109 S.Ct. 162 (1988); *Bailey v. Shillinger*, 828 F.2d 651, 653 (10th Cir. 1987).

*Riddle v. Jones*, 1990 WL 145574 (No. 90-1118) (6th Cir. Oct. 4, 1990).

In the instant case, Plaintiff claims that he was deprived of outdoor exercise for longer than thirty days at a time, without any sort of exercise grace period before resuming his NOCM confinement. Plaintiff's claim that he is being deprived of outdoor exercise would satisfy the first objective element of the test articulated in *Wilson*. Plaintiff's NOCM placement does deprive him of exercise opportunities. However, Plaintiff must also show that there was no penological justification for the restriction, as per the subjective aspect of the *Wilson* test. Defendants have

offered a number of misconduct reports as evidence, showing that Plaintiff has repeatedly destroyed prison property and assaulted prison officers. Moreover, Plaintiff has continued to make threats against prison staff while incarcerated in an NOCM cell. Defendants claim that Plaintiff's placement in an NOCM cell is not a punishment, but a means to ensure the safety of prisoners and staff. In recommending Plaintiff for an NOCM cell, the recommending officer cited a continued risk of danger rather than retributive punishment as the reason for moving Plaintiff (Exhibit 25, Docket #63). The safety of prison staff and other inmates is a legitimate penological purpose.

This Court, in a case-by-case analysis, should also consider a number of other relevant factors in determining whether Plaintiff's NOCM confinement violated the Eighth Amendment. Plaintiff's cell was 144 square feet, large enough for indoor exercise. The length and severity of the deprivation of exercise was severe and, were Plaintiff a less dangerous prisoner, would likely be excessive. However, given Plaintiff's history of violence and continued threats made against prison personnel, there was a legitimate penological purpose and justification for placing Plaintiff in an NOCM cell and separating him from the general prison population. Also, the order placing Plaintiff in an NOCM cell specified that his NOCM status be reviewed weekly (Exhibit 25, Docket #63). If Plaintiff had ceased his threats and assaults, his confinement would likely have been much shorter. Plaintiff alleges physical and mental injuries arising from his lack of exercise. However, prison medical officials could find no significant injury resulting from Plaintiff's NOCM confinement. Plaintiff has not rebutted the prison medical reports. Finally, Plaintiff has demonstrated no particularized need for exercise. Plaintiff's extensive history of misconducts and assaultive behavior justified his unusual placement in an NOCM cell. Plaintiff proved that less restrictive means could not ensure the staff and prisoner security. In viewing the record in a light most favorable to the

Plaintiff, this court finds that the record does not support Plaintiff's allegation that he was deprived of exercise contrary to the Eighth Amendment.

Plaintiff claims that he was deprived of cleaning supplies for his cell and personal grooming supplies, and was subjected to unsanitary conditions which amounted to cruel and unusual punishment. The Eighth Amendment requires that sanitation be "minimally adequate" to sustain health. *Grubbs v. Bradley*, 552 F. Supp. at 1222. Plaintiff was denied access to a broom, dustpan, toilet cleanser and toilet brush. These were withheld for safety reasons since Plaintiff could have conceivably fashioned these items into weapons. Given Plaintiff's violent history and his continuous threats to prison staff, such a withholding was not unreasonable. Plaintiff was supplied with a sponge to clean his cell. A sponge is adequate for keeping a cell sanitary, and depriving Plaintiff of a toilet brush, mop and broom was not a violation of the Eighth Amendment. Plaintiff was denied personal grooming supplies such as nail clippers and a shaving razor, and was denied haircuts. Again, Defendants claim that this is because Plaintiff is an extremely dangerous prisoner and that allowing access to these items and services poses a security risk. Plaintiff also claims that he was denied the regular use of a shower. Even accepting this allegation as true, Plaintiff was provided with soap, towels and running water from a sink. These are adequate to sustain health. When a plaintiff raises a claim regarding the conditions of his confinement and not a specific punishment, he must show that there was some deliberate indifference on the part of prison officials. *Farmer v Brennan*, 511 U.S. 825, 837 (1994). In regards to the cleaning supplies, prison policy mandates the types of supplies that can be provided to different classifications of prisoners. There was no indifference in failing to provide certain supplies. The withholding of those supplies was based on valid safety concerns. Likewise, Defendants did not show indifference to Plaintiff's personal hygiene. He was provided with soap and towels, and received medical attention when it was

requested. There is therefore no genuine issue of fact in dispute, and it is my recommendation that summary judgment be granted in favor of the Defendants with respect to this claim.

Plaintiff alleges that he was deprived of typewriter access. This is a claim that he was denied access to the courts. It is well established that prisoners have a constitutional right of access to the courts. *Bounds v. Smith*, 430 U.S. 817, 821 (1977). The principal issue in *Bounds* was whether the states must protect the right of access to the courts by providing law libraries or alternative sources of legal information for prisoners. *Id.* at 817. The Court further noted that in addition to law libraries or alternative sources of legal knowledge, the states must provide indigent inmates with "paper and pen to draft legal documents, notarial services to authenticate them, and with stamps to mail them." *Id.* at 824-25. An indigent prisoner's constitutional right to legal resources and materials is not, however, without limit. In order to state a viable claim for interference with his access to the courts, a plaintiff must show "actual injury." *Lewis v. Casey,* 518 U.S. 343, 349 (1996); *see also Talley-Bey v. Knebl*, 168 F.3d 884, 886 (6th Cir. 1, 1999); *Knop v. Johnson*, 977 F.2d 996, 1000 (6th Cir. 1992), *cert. denied*, 507 U.S. 973 (1993); *Ryder v. Ochten*, No. 96-2043, 1997 WL 720482, *1-2 (6th Cir. Nov. 12, 1997). In other words, a plaintiff must plead and demonstrate that the shortcomings in the prison legal assistance program or lack of legal materials have hindered, or are presently hindering, his efforts to pursue a nonfrivolous legal claim. *Lewis*, 518 U.S. at 351-353; *see also Pilgrim v. Littlefield*, 92 F.3d 413, 416 (6th Cir. 1996). Plaintiff has failed to show any injury or prejudice. He offers no evidence that any handwritten documents were rejected by a court or prejudiced a judicial ruling. Plaintiff was provided with a pen and paper to draft legal documents, and that is sufficient to provide constitutional access to the courts. It is my recommendation that summary judgment for Defendant be granted with respect to this claim.

Plaintiff also claims that he was denied due process in regard to his transfer into an NOCM cell. In all cases where a person stands to be deprived of his life, liberty or property, he is entitled to due process of law. This due process of law gives the person the opportunity to convince an unbiased decision maker that, for example, he has been wrongly or falsely accused or that the evidence against him is false. *Zinermon v. Burch*, 494 U.S. 113, 127-28, 110 S. Ct. 975, 984 (1990). The Due Process Clause does not guarantee that the procedure will produce a correct decision. "It must be remembered that even if a state decision does deprive an individual of life, [liberty], or property, and even if that decision is erroneous, it does not necessarily follow that the decision violated that individual's right to due process." *Martinez v. California*, 444 U.S. 277, 284, n.9, 100 S. Ct. 553, 558, n. 9 (1980). "[T]he deprivation by state action of a constitutionally protected interest in 'life, liberty or property' is not in itself unconstitutional; what is unconstitutional is the deprivation of such an interest *without due process of law*." *Zinermon*, 494 U.S. at 125, 110 S. Ct. at 983 (1990) (emphasis in original). Further, an inmate has no right to counsel in disciplinary proceedings. *Wolff v. McDonnell*, 418 U.S. 539, 569-70, 94 S. Ct. 2963, 2981 (1974); *Franklin v. Aycock*, 795 F.2d 1253, 1263 (6th Cir. 1986). Plaintiff received the opportunity for a hearing in every misconduct incident, and did not receive any administrative punishment without a prior hearing. Plaintiff also did not suffer any atypical or significant hardship, nor was he subjected to a disciplinary segregation. *See Sandin v. Connor*, 515 U.S. 472, 483-485 (1995.) Plaintiff's segregation was not punitive in nature, but administratively necessary to ensure the continued safety and functionality of the prison environment. Plaintiff received due process in every instance where it was entitled, and as such I recommend that summary judgment be granted for Defendants with respect to this claim.

Finally, Defendants raise the defense of qualified immunity to Plaintiff's claims, and request that summary judgment be granted on that ground as well. Qualified Immunity protects

government officials acting in good faith in their official capacities. Government officials, performing discretionary functions, generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. *Dietrich v. Burrows*, 167 F.3d 1007, 1012 (6th Cir. 1999); *Turner v. Scott*, 119 F.3d 425, 429 (6th Cir. 1997); *Noble v. Schmitt*, 87 F.3d 157, 160 (6th Cir. 1996); *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). An "objective reasonableness" test is used to determine whether the official could reasonably have believed his conduct was lawful. *Dietrich*, 167 F.3d at 1012; *Anderson v. Creighton*, 483 U.S. 635, 641 (1987).

When determining whether a right is clearly established, this court must look first to decisions of the United States Supreme Court, then to decisions of the Sixth Circuit and to other courts within this Circuit, and finally to decisions of other circuits. *Dietrich*, 167 F.3d at 1012. An official action is not necessarily protected by qualified immunity merely because the very action in question has not previously been held to be unlawful. Rather, in light of pre-existing law, the unlawfulness of the official's conduct must be apparent. *Dietrich*, 167 F.3d at 1012; *Wegener v. City of Covington*, 933 F.2d 390, 392 (6th Cir. 1991). When faced with a qualified immunity defense, the court must first determine whether or not the plaintiff has stated a claim upon which relief can be granted. *Siegert v. Gilley*, 500 U.S. 226, 232 (1991); *Turner*, 119 F.3d 429. If the court answers that question in the affirmative, the court goes on to determine whether or not the right allegedly violated was clearly established. *Id.* Thus, where the underlying claim is one in which a certain motive or intent is an element, and plaintiff has made allegations which, if proven, will establish the existence of the necessary state-of-mind, a factual issue exists, preventing dismissal pursuant to Rules 12(b)(6) or 56. *See Sanchez v. Sanchez*, 777 F. Supp. 906 (D.N.M. 1991). In the Sixth Circuit, plaintiff need not include such allegations in his complaint, since in preparing his Complaint,

he has no duty to anticipate affirmative defenses. *Dominique v. Telb*, 831 F.2d 673, 676 (1987). However, once the affirmative defense is raised, plaintiff must come forward with such additional facts as would establish the requisite state of mind. *Id.*

In the opinion of the undersigned, under the circumstances in this case, Plaintiff's transfer to an NOCM cell did not violate clearly established law. Defendants took precautions to ensure that Plaintiff had adequate medical care, hygiene, and reviewed his NOCM placement weekly to ensure that Plaintiff remained in an NOCM cell only until it could be determined that he could be safely released back into the general prison population. The right to exercise is not absolute, and there is no per se right to exercise; rather, inmates can be deprived of levels of exercise in extraordinary conditions. *Patterson,* 717 F.2d at 289. It was objectively reasonable for the Defendants, in light of Plaintiff's behavior, to believe that depriving Plaintiff of out-of-cell exercise, certain cleaning supplies, and typewriter access was a necessary means to protect the safety of prison guards and other inmates. I find that Plaintiff has failed to overcome the qualified immunity defense raised by the Defendants, and I further recommend that summary judgment be granted in favor of Defendants.

I also recommend that Plaintiff's state law claim be dismissed. To the extent that Plaintiff is claiming his state law rights were violated, it is recommended that this court refuse to exercise pendent jurisdiction over such claims. Claims raising issues of state law are best left to determination by the state courts, particularly in the area of prison administration. In addition, pendent jurisdiction over state law claims cannot be exercised after all federal claims have been dismissed. *United Mine Workers v. Gibbs*, 383 U.S. 715, 726-727 (1966); *Smith v. Freland*, 954 F.2d 343, 348 (6th Cir.), *cert. denied*, 504 U.S. 915 (1992).

Accordingly, it is recommended that Defendant Bobo be dismissed without prejudice for lack of exhaustion of administrative remedies and that the remaining Defendants be dismissed with prejudice, granting Defendants' motion for summary judgment (Docket #60).

Further, if the court adopts this recommendation the court should decide that an appeal of this action would not be in good faith within the meaning of 28 U.S.C. § 1915(a)(3). *See McGore v. Wrigglesworth*, 114 F.3d 601, 611 (6th Cir. 1997). For the same reasons that the court grants defendants' motion for summary judgment, the court can discern no good-faith basis for an appeal. It is recommended that should the plaintiff appeal this decision, the court assess the $455 appellate filing fee pursuant to § 1915(b)(1), *see McGore*, 114 F.3d at 610-11, unless plaintiff is barred from proceeding *in forma pauperis*, e.g., by the "three-strikes" rule of § 1915(g). If he is barred, he should be required to pay the $455 appellate filing fee in one lump sum.

NOTICE TO PARTIES: Objections to this Report and Recommendation must be served on opposing parties and filed with the Clerk of the Court within 10 days of receipt of this Report and Recommendation. 28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b); W.D. Mich. LCivR 72.3. Failure to file timely objections constitutes a waiver of any further right to appeal. *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). *See also Thomas v. Arn*, 474 U.S. 140 (1985).

      /s/ Timothy P. Greeley  
TIMOTHY P. GREELEY  
UNITED STATES MAGISTRATE JUDGE

Dated:   July 28, 2006